IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| RONALD CHANNEL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 317-060 |
| | * | |
| JOHNNY SMITH, in both his | * | |
| individual and official | * | |
| capacities, and LAURENS COUNTY, | * | |
| | * | |
| Defendants. | * | |

# O R D E R

Presently before the Court is Defendants' motion for summary judgment. Upon review of the parties' briefs, the record evidence, and relevant law, the motion is **GRANTED** for the reasons stated below.

## I. BACKGROUND

Plaintiff Ronald Channel was a pre-trial detainee in the Laurens County Jail on August 3, 2015. On that day, an altercation occurred between Plaintiff and a Laurens County Sheriff's Deputy, Defendant Johnny Smith, while Deputy Smith escorted Plaintiff from the visitation area back to his cell. The entire incident was recorded by a hallway video camera in the jail. Other than the video, the only evidence presented by the parties is the deposition testimony of Plaintiff. To the extent his testimony is

contradicted by the video, however, it is immaterial. See Scott v. Harris, 550 U.S. 372, 378-81 (2007) (announcing that a court should not rely upon a "visible fiction," *i.e.*, a version of events "utterly discredited" by a videotape; rather, a court should view the facts "in the light depicted by the videotape"). In truth, Plaintiff's account of the incident at deposition is at complete odds with the video at almost every critical point. For that reason, Defendants' Statement of Material Facts detailing the incident is undisputed, even in the face of Plaintiff's denials. In other words, Plaintiff's denials, based on his testimony, are unworthy of credence and will not be discussed further.

On August 3, 2015, Deputy Smith escorted Plaintiff and another inmate down a hallway; neither inmate was shackled in any way. (Defs.' St. of Material Facts, Doc. No. 27-2, ¶¶ 1-2.) The other inmate rounded a corner and came into the video frame first. Plaintiff followed, and Deputy Smith followed Plaintiff. As they rounded the corner and walked down the hallway, Plaintiff pointed and gestured to the right.[1] (Id. ¶ 3.) Deputy Smith immediately nudged Plaintiff on his right shoulder and gestured to urge him to continue walking down the hallway.[2] (See id. ¶ 4.) Plaintiff

---

[1] Apparently Plaintiff was speaking to a prisoner in the holding cell to his right who he knew from the streets. (Defs.' St. of Material Facts, ¶ 3.)
[2] Defendants use the word "tap" to describe Deputy Smith's contact with Plaintiff. (Defs.' St. of Material Facts, ¶ 4.) While the touch was slightly more forceful than a tap, it certainly was not

2

responded to the nudge by stopping and turning to face Deputy Smith, pointing a finger in his face, and "bowing up" to him.[3] (Id. ¶ 5.) Deputy Smith then shoved Plaintiff in the chest with an open hand, which forced Plaintiff to step backwards into the hallway wall. (Id. ¶ 7.) Plaintiff immediately came back toward Deputy Smith in a fighting stance, at which time Deputy Smith lunged into the top of Plaintiff's legs, causing them both to fall to the floor. (Id. ¶¶ 8-9.)

Because Deputy Smith had essentially undercut Plaintiff when he lunged into him, Plaintiff ended up on top of Deputy Smith as they went to the floor. (Id. ¶ 10.) Two other law enforcement officials immediately ran over and helped restrain Plaintiff. (Id. ¶ 11.) At no time did Deputy Smith or the other guards punch, hit or kick Plaintiff; rather, the only force that was used by the three guards, including Deputy Smith, was holding onto Plaintiff while gaining control of him. (Id. ¶ 12.) Deputy Smith actually stepped away at one point, allowing the other officials to handcuff Plaintiff and lead him away.

---

"a great big push" or a shove that "forced [Plaintiff] to take three or four unaccounted for steps." (See Pl.'s Dep., Doc. No. 30, at 30-31.) In fact, Plaintiff completely stops in his tracks and faces the deputy.

[3] The Court acknowledges that the term "bowing up" is colloquial, but it is used by Defendants and is an apt description of Plaintiff's response. It is beyond dispute that Plaintiff's response was pugnacious.

3

Plaintiff had no visible injuries as a result of the incident. Within a day of the incident, however, Plaintiff was sent to a doctor at Hillcrest Urgent Care in Laurens County complaining of back pain. His back was x-rayed, he was given steroid shots in his back, and given steroid pills. (Id. ¶¶ 22, 25.) Plaintiff was also taken by ambulance to Fairview Hospital to have an MRI scan approximately two days after the incident. (Id. ¶ 26.)

On July 26, 2017, Plaintiff filed this case in the Superior Court of Laurens County, asserting federal claims of excessive force and deliberate indifference under 42 U.S.C. § 1983 and state law claims of failure to provide medical care, negligence and battery. Defendants removed Plaintiff's case to this Court on October 25, 2017.

On March 23, 2018, this Court denied Defendants' motion for judgment on the pleadings because the videotape and medical records upon which they relied were matters outside of the pleadings. (Doc. No. 16.) The Court was nevertheless able to narrow the federal claims, concluding that the claims of excessive force and deliberate indifference to Plaintiff's medical needs remain only against Deputy Smith in his individual capacity. (Id. at 6-7.)

Upon the close of discovery, Defendants filed the instant motion for summary judgment. The Clerk gave the nonmoving party, the Plaintiff, notice of the summary judgment motion and the

4

summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 28.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

5

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

### III. DISCUSSION

At summary judgment, Deputy Smith asserts that he is entitled to qualified immunity for Plaintiff's federal claims of excessive force and deliberate indifference.

Qualified immunity is a judicially-created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). Courts consider whether the public official was "(a)

6

pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were in his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, the incident occurred when Deputy Smith was acting within the scope of his duties by escorting Plaintiff back to his cell in his capacity as a prison guard. Accordingly, Deputy Smith was acting within the scope of his discretionary authority when he engaged in the conduct presently challenged by Plaintiff. See, e.g., Jenkins v. DeKalb Cnty., Ga., 528 F. Supp. 2d 1329, 1336-37 (N.D. Ga. 2007) (stating that even if a correctional officer "makes a mistake and violates a rule, policy or procedure does not mean that the officer is no longer acting within the scope of his duties as a correctional officer"); Smith v. Andrews, 2015 WL 4716037 (S.D. Ga. Aug. 7, 2015) (concluding that prison guards are within the scope of their discretionary authority when they are escorting a prisoner to a cell); Bogus v. Ala. Dep't of Corr., 2008 WL 11379957 (N.D. Ala. Sept. 22, 2008) (finding that a prison guard was acting within the scope of his duties in asking a prisoner to return to his cell). Accordingly, the burden shifts to Plaintiff to demonstrate that qualified immunity is not appropriate. See Lumley, 327 F.3d at 1194.

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). "The first [prong] asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001) (alterations omitted)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 1866 (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "Courts have discretion to decide the order in which to engage these two prongs . . . [b]ut under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Id. (citations omitted). Because Plaintiff cannot establish a constitutional violation as a matter of law, the Court need not address the clearly established prong.

### A. Deliberate Indifference

Plaintiff claims that the altercation with Deputy Smith caused a significant back injury. (Compl. ¶ 18.) Plaintiff further claims that Defendants allowed him "to suffer without proper or adequate medical care" for his back injury. (Id. ¶ 25.)

To establish a claim of deliberate indifference to a serious medical need, a plaintiff must show (1) he had a serious medical

8

need – the objective component; (2) the defendant acted with deliberate indifference to that need – the subjective component; and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

In this case, the Court has already noted that Plaintiff is pursuing his federal claims only against Deputy Smith (see Order of March 23, 2018, at 6); thus, only the actions of Deputy Smith are relevant to Plaintiff's claim of deliberate indifference. At summary judgment, Defendants point out that there is no evidence that Deputy Smith was involved in any of Plaintiff's medical care after the altercation. For this reason, no reasonable jury could determine that Deputy Smith's conduct vis-à-vis Plaintiff's medical care caused harm to Plaintiff let alone that Deputy Smith acted with deliberate indifference to his back injury.

In response, Plaintiff does not address Defendants' motion for summary judgment on his claim of deliberate indifference; thus, he appears to have abandoned the claim. Regardless, there is no evidence to support a deliberate indifference claim against Deputy Smith. Deputy Smith is therefore entitled to summary judgment on the claim.

B. **Excessive Force**

The use of physical force against a pretrial detainee may constitute a deprivation of due process in violation of the

Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). To establish an excessive force claim under the Fourteenth Amendment, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473-74 (2015). A court considers the following factors in considering the reasonableness of the force used: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the injury inflicted upon the plaintiff; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Id. at 2473. Deference is given to prison officials acting to preserve discipline and security. Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009); see Kingsley, 135 S. Ct. at 2473 ("Courts must also credit the government's need to manage the facility where an individual is detained, and defer to policies and practices that jail officers believe are needed to preserve order, discipline, and security.").

In this case, it is undisputed that Plaintiff "bowed up" and pointed a threatening finger at Deputy Smith when he was nudged by

10

the deputy. This created a security problem, particularly since the officer was escorting two unshackled inmates at the time. Plaintiff's conduct could have been reasonably perceived as a threat to the officer. As one court has noted, "physical resistance by a prisoner in the close confines of a prison is an exceptionally dangerous event that must be stopped immediately." Youman v. Wood, 2010 WL 3958703, at *3 (N.D. Fla. Aug. 16, 2010). Deputy Smith's response was to shove Plaintiff. This shove precipitated Plaintiff's further aggression toward Deputy Smith, which ultimately resulted in Deputy Smith's lunge into Plaintiff and the fall that allegedly caused Plaintiff's back injury. Again, Plaintiff's continued aggression (coming back at Deputy Smith in a fighting stance) is active resistance and is certainly a threat. Moreover, Deputy Smith's take down of Plaintiff showed a certain amount of restraint. Deputy Smith quelled any threat by Plaintiff within seconds and exerted no more force than was necessary to bring the matter to a swift conclusion.

The facts critical to this constitutional analysis are compressed into less than twenty seconds from which Plaintiff believes a jury could conclude that Deputy Smith's response to his "bowed up" and threatening conduct was objectively unreasonable. Yet, to submit this to a jury would be to ignore the deference that must be given to prison officials under similar circumstances.

Whether Deputy Smith's initial shove[4] and subsequent take down were *necessary* is not the issue. "The existence of 'a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives' is not enough to support a claim of excessive force in an institutional setting." Scroggins v. Davis, 346 F. App'x 504, 505 (11th Cir. 2009) (quoting Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999)). Moreover, the Court is to apply the objectively reasonable standard in light of the facts confronting the officer at the time of the incident, not with the 20/20 vision of hindsight. Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015).

This case exemplifies the admonition of the United States Supreme Court in Graham v. Connor, 490 U.S. 386, 396 (1989): "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

In short, in viewing the video of the incident in the light most favorable to Plaintiff, this Court concludes that no jury could find that the force used by Deputy Smith was objectively unreasonable. Cf. Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (holding that grabbing an inmate by the throat and

---

[4] The Court is referring to the deputy's shove of Plaintiff after Plaintiff "bowed up" at him, not the mere nudge of Plaintiff's shoulder.

pushing him against the bars of his cell was not excessive after the inmate failed to follow instructions and disrupted prison procedures). Accordingly, Deputy Smith is entitled to summary judgment on Plaintiff's excessive force claim.

IV. CONCLUSION

Upon the foregoing, Defendant Smith's motion for summary judgment as to Plaintiff's federal claims (doc. no. 27) is **GRANTED**. The Court declines to exercise jurisdiction over Plaintiff's state law claims[5]; thus, they are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendant Johnny Smith and **CLOSE** this case. Costs are taxed against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of October, 2018.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims under which it has original jurisdiction.

13